### JOSEPH O. MORRIS

*v.*

### CALUMET AND CHICAGO CANAL AND DOCK COMPANY.

*Opinion filed February 21, 1902.*

MORTGAGES—*what not ground for refusing foreclosure of a trust deed.* Delay by the vendor of land in executing an agreement to release lots from the lien of the trust deed, given for purchase money, as the lots were sold, upon payment of the proportionate amount of the indebtedness secured, is not ground for refusing foreclosure of the trust deed for the amount due thereunder, where there is no evidence that the grantor of the trust deed had any opportunity to sell lots and was prevented from making the sale by reason of the delay, or that, prior to the execution of the agreement, he had ever requested the release of any lot or offered to pay the amount necessary to secure a release.

*Morris* v. *Calumet and Chic. Canal, etc. Co.* 91 Ill. App. 437, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

F. S. SHAW, (JOSEPH O. MORRIS, *pro se*,) for appellant.

GREEN & PRINGLE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the Branch Appellate Court affirming a decree of the circuit court of Cook county foreclosing a deed of trust as a mortgage. The defense was, that the notes and deed of trust were given by appellant and one Ganse in lieu of former obligations of the same character given for purchase money of land sold and conveyed by appellee to them, and that at the time of the purchase appellee was informed and knew that appellant and Ganse were buying the land to subdivide into lots and to sell at a profit, and that it was agreed, verbally, that appellee would give the vendees a written agreement, or incorporate the same in the deed of trust, to release from the lien of such deed of trust the property, lot by lot, on payment of a corresponding part, in value, of the secured debt; that when the conveyance and the deed of trust were executed, in August, 1890, appellant observed and complained that the latter contained no provision for such release, and the president of the appellee company said to appellant that there was some friction between the directors on that question; that the property had not yet been platted; that appellant should proceed to have the same surveyed and platted and the company would then give the contract of release; that thereupon appellant executed the papers on his part and they were delivered; that thereafter the land was platted and the plat filed for record in October, 1890; that thereafter appellant frequently, and from time to time, demanded from appellee that it execute and deliver

to him such written agreement to release, but that he was put off by various excuses until September 22, 1891, when the contract to release was executed and delivered; that the property greatly depreciated in its market value during that year, and that appellant was unable to sell lots because of appellee's failure to comply with its said agreement; and that by reason of such default of appellee appellant sustained loss and damages in excess of appellee's demands.

It is clear that appellant presented no defense to the complainant's case for several reasons. In the first place, even if it were conceded that the verbal agreement set up in the answer and cross-bill was not merged in the written instruments which passed between the parties, still it was not proved, nor was any evidence offered to prove, that appellant, prior to the execution of the written contract for release by the company, ever requested appellee to release any lot or lots, or ever offered to pay appellee the ratable value of any such lot, or any amount whatever, to obtain its release from the lien of the deed of trust. Nor was there sufficient evidence offered to prove that appellant was prevented from making sales of the property, or any part of it, by the delay of appellee in making the written agreement to release. No evidence was offered that appellant had any opportunity to sell and was prevented from making a sale by the alleged default of appellee or by any refusal on its part to release.

In the next place, we are of the opinion that if appellant ever had any enforceable demand for damages against the appellee in the premises he waived it. After the alleged depreciation of the property, and in September, 1891, he accepted the written agreement of the company to release on the terms therein prescribed, which were different, in some respects, from those of the alleged verbal agreement, and acted under it until 1895, when he sought and obtained an extension of time for the pay-

ment of his said indebtedness without claiming any damages from appellee because of its alleged default. In securing such extension he complained to appellee of its delay in executing its agreement to release, and such complaint was one of the grounds upon which the extension of time was secured. The old notes and deed of trust which had been executed by him and one Ganse, and also by another who had a half interest in the property, were canceled and surrendered, the property and indebtedness were divided between him and Ganse, on the one hand, and one Davis, the other owner, on the other. Appellant and Ganse then gave the notes and deed of trust now in controversy for their part of the indebtedness. From appellant's own showing we are satisfied that if he ever had any claim for damages against appellee it was embraced in the division and settlement of 1895, when the new papers were executed, and was settled or waived.

Other grounds sufficient to defeat appellant's claim appear from the record, but it is unnecessary to state them.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*